**Anna ANTON, Lake County Auditor, and Michael A. Gilliana, Appellants–Defendants,**

v.

**Arlen K. DAVIS, Appellee–Plaintiff.**

**No. 66A05–9503–CV–75.**

Court of Appeals of Indiana.

Oct. 25, 1995.

Rehearing Denied Jan. 19, 1996.

Todd A. Etzler, Kathryn D. Schmidt, Burke, Murphy, Costanza & Cuppy, Merrillville, for Appellants.

David J. Brandewie, Merrillville, for Appellee.

### *OPINION*

BARTEAU, Judge.

Michael Gilliana, a purchaser of real estate at a tax sale, and Anna Anton, the Lake County Auditor, appeal from a partial summary judgment invalidating the tax sale and holding that the appellee Arlen Davis was entitled to ownership of the property contingent upon his payment of delinquent taxes and interest. We reverse and order summary judgment in favor of Gilliana and Anton.

### *FACTS*

Appellee Davis owned a house on two lots at 155 North Linda Street in Hobart, Indiana. In 1988, Davis became delinquent in his payment of real estate taxes on the property, and the property was placed for tax sale. The Lake County Auditor, appellant Anna Anton, mailed a Notice of Tax Sale for each lot to Davis at his 155 North Linda Street address on September 12, 1988, and Davis received both notices on September 13, 1988.

Indiana Code 6–1.1–24–4 states in part "the county auditor shall send a notice of the sale by certified mail to the owner or owners of the real property at their last known address ... The notice must set forth the key number, if any, of the real property and a street address, if any, or other common description of the property other than a legal description." (the "section 4 notice.") The Notices of Tax Sale, in the section designated "property description," described each lot only by its key number and legal description, though Davis's current address and the street address of the property being placed for sale was correctly indicated in the mailing address section of each. Each notice indicated the lots were to be sold on October 3, 1988, but the sale was actually held on October 17, 1988.

Davis did nothing to satisfy the tax delinquency, and the property was sold to Gilliana. The Auditor issued to Gilliana a single tax deed which contained the key numbers and legal description of both lots. On January 12, 1989, a Notice of Property Sold at Tax Sale was sent to Davis for each of the lots. The notices were sent to him and others pursuant to Ind.Code § 6–1.1–24–4.2 (now repealed), which required the Auditor to send a notice of sale to "all persons having a substantial property interest of public record that would be affected by the sale of the tract ..." (the "section 4.2 notice.") Like the section 4 notices previously sent to Davis, they contained only a key number and legal description of each lot in the "description of real property" section, but contained a street address in the mailing address area. However, both were incorrectly addressed to 151 North Linda Street, the house next door to the Davis property.

Finally, on August 28, 1989, the Auditor mailed a "Notice of Tax Sale Redemption or Issuance of Deed" for each lot to Davis at the correct 155 North Linda street address.[1] Ind.Code § 6–1.1–25–6 requires the Auditor to send to the former owner of a tract sold at tax sale a notice prior to the expiration of the former owner's redemption period. That no-

---

1. In its memorandum opinion, the trial court found that the "first notice" was sent to Davis at the correct address, while the "second and third" notices to Davis were sent to 151 N. Linda Street. The "second and third" notices to which the court refers are apparently the two separate notices of sale, both sent on January 12, 1989, for the two lots required by Ind.Code § 6–1.1–24–4.2, notice to persons with a substantial property interest of public record. All of the other notices were sent to the correct address.

tice must indicate, among other things, the date the tract was sold, the amount of money required to redeem the tract, and the description of the tract shown on the certificate of sale. The statute does not require the street address of the property. The notices sent to Davis, like the prior notices, describe the property by key number and legal description, and include the street address only in the mailing address section. One of the notices also erroneously states that the property was sold to Gilliana on October 17, 1989, an impossibility in light of the fact the notice was mailed almost two months before that date.[2] The other notices had correctly indicated the October 17, 1988 sale date.

## ISSUES

Gilliana and Anton raise three issues, which we consolidate and restate as one: whether the deficiencies in the notices the Auditor sent to Davis were, as a matter of law, sufficient to void the sale of the subject property to Gilliana. Davis raises the additional argument that the tax deed to Gilliana was ineffective to convey both lots because a single tax deed cannot convey more than one parcel of land.

## DECISION

■ When we review a trial court's entry of summary judgment, we apply the same standard as does the trial court: we consider all of the evidentiary matter designated to the trial court in the light most favorable to the non-moving party in order to determine whether there is any genuine issue of material fact remaining to be resolved by the trier of fact. *Villanella v. Godbey* (1994), Ind. App., 632 N.E.2d 786, 789; Ind.Trial Rule 56(C). If no genuine issue of material fact exists, and if the moving party is entitled to judgment as a matter of law, we must affirm the summary judgment. If, as here, both parties requested summary judgment, we consider each motion separately to determine whether there is a genuine issue of material fact and whether the moving party is entitled

to judgment as a matter of law. *Board of School Trustees of Salem Community Schools v. Robertson* (1994), Ind.App., 637 N.E.2d 181, 184, *trans. denied.*

■ A county auditor must perform a number of statutorily-mandated acts when conducting a tax sale, *see Mennonite Bd. of Missions v. Adams* (1983), 462 U.S. 791, 793, 103 S.Ct. 2706, 2708, 77 L.Ed.2d 180, because such a sale can significantly affect the property rights of the delinquent property owner and others with an interest in the property. *Id.* at 795–97, 103 S.Ct. at 2709–11. Specifically, a state must provide notice "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action" before taking an action that will affect a protected property interest. *Id.* at 795, 103 S.Ct. at 2709. Notice is constitutionally adequate when "the practicalities and peculiarities of the case ... are reasonably met." *Smith v. Breeding* (1992), Ind.App., 586 N.E.2d 932, 936 (quoting *Mullane v. Central Hanover Bank & Trust Co.* (1950), 339 U.S. 306, 314–315, 70 S.Ct. 652, 657–658, 94 L.Ed. 865.)

■ So, while all "essential acts" concerning the tax sale must be properly performed, *Smith v. Swisher* (1941), 109 Ind.App. 654, 659, 36 N.E.2d 945, 947, substantial compliance with the statutory procedures will satisfy the due process requirements. *See Smith v. Breeding,* 586 N.E.2d at 935 (noting a long line of Indiana cases in which failure to comply "substantially" with statutes governing tax sales and the steps leading up to them rendered the tax deeds void). In *Smith v. Breeding,* a tax deed was held to be valid even though the auditor had not entered the delinquent owner's address in the transfer book nor on the face of the deed as required by statute. The tax sale certificate erroneously listed the tax sale purchaser as the delinquent owner and listed the delinquent owner as the purchaser, and the auditor failed to send a notice of right of redemption

---

2. Davis further argues that the notice was defective because it did not notify him that the delinquent taxpayer could redeem the property for 110% of the purchase price, if he did so within six months of the tax sale, Ind.Code § 6–1.1–25–2(b)(1). Since the notice was not sent to Davis within that six month period, and was not required to be, Ind.Code § 6–1.1–25–6(a), we will not address that argument here. The notice did indicate the correct percentages for the relevant time periods.

to the defaulting owner more than 30 days before the redemption date as the statute requires. The court found Smith, the delinquent owner, was not prejudiced by the late mailing, and that the "scrivener's error" on the tax sale certificate was of "no moment" because it merely created a lien in the purchaser and does not transfer title, *Id.* at 937–938. Any lack of notice arising from the auditor's failure to record Smith's address in the transfer book was an error that Smith could have corrected by properly informing the auditor of his change of address. *Id.* at 937.

■ Here, the Lake County Auditor performed all of the statutorily required acts, and substantially complied with the statutory tax sale procedures. Three statutorily required notices are at issue here. The first, the "section 4" notice, must be sent to the property owner's last known address, and must set forth the key number, if any, of the property, a street address, if any, or some other common description other than a legal description. Both of Davis's section 4 notices contained all the required information. While the street address of the property was not included in the "description of real property" section of the documents along with the key number and the name of the subdivision and the lot number, it was included in the mailing address section. Thus, it was set forth in the notices as required by statute. The section 4 notices also listed the tax sale date as October 3, when the sale was actually held on October 17. Davis could not have been prejudiced by that error, because if he had taken action to redeem his property on October 3, he would have become aware of the change in the sale date.

■ The next two notices, the "section 4.2 notices," were insufficient because they were not sent to Davis at his correct address and they did not include the street address of the property. Because we find that the statute does not require a property owner who is entitled to a section 4 notice to also be sent a section 4.2 notice, the Auditor's error did not affect the validity of the tax sale of Davis's property.

At the time of the Davis tax sale, I.C. 6–1.1–24–4.2 required the auditor to send a notice of sale to "all persons having a sub-stantial property interest of public record that would be affected by" a tax sale of the tract. A "substantial property interest of public record" is title to or interest in a tract which is recorded in the office of a county recorder. I.C. 6–1.1–24–1.9. As such, the definition does not exclude the owner-occupant of a tract subject to tax sale. However, the statute, read in context, could not have been intended to require a section 4.2 notification to property owners.

■ The section 4 notice and the section 4.2 notice must include the same information about the property subject to tax sale. Both notices must be mailed in the same manner. This court may not view a statute in isolation, but must ascertain its effect by viewing it in context with the entire act. *Board of School Trustees of Salem Community Schools v. Robertson* (1994), Ind.App., 637 N.E.2d 181, 185. We presume the legislature intended its language be applied in a logical manner consistent with the statute's underlying policy and goals, *Ashlin Transportation Services v. Indiana Unemployment Insurance Board* (1994), Ind.App., 637 N.E.2d 162, 166, and we presume the legislature did not intend to enact a statute that is a nullity, *Northern Indiana Bank and Trust Co. v. State Board of Finance* (1983), Ind., 457 N.E.2d 527, 532.

A logical application of section 4.2, viewed in the context of the act, indicates that it was intended to apply only to persons other than the property owner who have a "substantial property interest of record" in the same tract. Requiring virtually identical notices containing the same information to be sent in the same manner to the same person as both "owner" and holder of an "interest" would render section 4 a nullity.

The differences between the section 4 notice to owners and the section 4.2 notice to interest holders further support the conclusion that the legislature did not intend to require the section 4.2 notice to be sent to owners along with the section 4 notice. While the section 4 notice must be sent to an owner at least 21 days before the tax sale, the section 4.2 notice may be sent as late as 90 days after the sale. The legislature could have logically concluded that it is more im-

portant to notify an owner prior to the tax sale than, for example, a lienholder.

The section 4.2 notice, but not the section 4 notice, must also include the date a tax certificate for the sale of the tract may be issued under I.C. 6–1.1–24–9. Because the information the tax certificate must contain cannot be known until after the tax sale, it would be impossible to include that information in the section 4 notice to the owner, which must be sent before the tax sale. Much of the information included in the section 9 notice to the interest holders is also contained in a notice that must be sent to the former owner before a tax deed is executed, I.C. 6–1.1–25–6, further indicating that the legislature did not intend to treat owners and other interest holders identically. That notice to the owner includes additional information about the owner's right to redeem the property, and it was sent to Davis at the correct 155 N. Linda street address.

Because we find that property owners are not entitled to section 4.2 notification in addition to section 4 notification, Davis could not have been prejudiced by any deficiencies in the section 4.2 notices the Auditor sent to the incorrect address.

 Davis argues that the notices of the owner's right to redemption he was sent pursuant to I.C. 6–1.1–25–6 were also inadequate. First, one of the two notices of his right to redemption (Davis was sent a notice for each of the two lots) misidentified the date of the tax sale as October 17, 1989. The other notice correctly indicated the tax sale date as October 17, 1988. Davis could not have been prejudiced by the typographical error in the notice. In light of the obvious conflict between the two notices, both of which referred to parcels sold at the same time and at the same sale, the burden was on Davis to inquire about the discrepancy. *See Holland v. King* (1986), Ind.App., 500 N.E.2d 1229, 1233 n. 2 (noting decisions which recognize that a duty is imposed upon property owners to watch tax proceedings in order to protect their interests). It should also be noted that the erroneous date could not possibly have been correct (the August 1989 notice indicated the property "was sold" in October of 1989), so Davis could not have been misled by it.

 Finally, Davis argues that the tax deed itself was defective because separate deeds were not prepared for each of the two parcels sold to Gilliana. While each parcel subject to tax sale must be *offered for sale* separately, *Smith v. Swisher*, 109 Ind.App. at 659, 36 N.E.2d at 947, Davis has directed us to no authority, nor has the court found any, for the proposition that a separate *deed* is required for each parcel sold to the same purchaser at the same sale. *See Pachter v. Gray* (1952), 231 Ind. 487, 109 N.E.2d 412 (finding a tax deed which conveyed two separate lots to be effective).

Because all the essential acts required in connection with the tax sale of the Davis property were performed, and the Auditor substantially complied with the statutory procedures, we reverse and order summary judgment in favor of the appellants Anton and Gilliana.

SHARPNACK, C.J. and HOFFMAN, J., concur.